IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
LUFKIN DIVISION

| | | |
|---|---|---|
| LAURIE JORDON | § | |
| *Plaintiff*, | § | |
| | § | |
| v. | § | Civil Action No. 9:05CV161 |
| | § | |
| TEXAS DEPARTMENT OF AGING AND | § | |
| DISABILITIES SERVICES, | § | JUDGE RON CLARK |
| | § | |
| *Defendant*. | § | |

**ORDER ON CROSS MOTIONS FOR SUMMARY JUDGMENT**

This is a case under the Family Medical Leave Act, 29 U.S.C. § 2611 et seq. ("FMLA").

Plaintiff worked for Lufkin State School, which is operated by Defendant Texas Department of

Aging and Disabilities Services ("DADS"), for five years prior to her termination on May 30,

2005.  Plaintiff alleges she missed work from May 2 to May 5, 2005 to care for her teenage

daughter prior to, and immediately following, her daughter giving birth.  Plaintiff also asserts

that she missed work beginning May 12, 2005 because she was sick and under the care of a

doctor.  Plaintiff claims that she was entitled to take leave in May 2005 under the FMLA.  She

asserts that Defendant interfered with her FMLA rights and retaliated against her for taking leave

allowed under the FMLA.

According to Defendant, Plaintiff continually called in sick without providing proper

documentation as required by Defendant's attendance policy.  After a conference was held on

May 24, 2005 with Plaintiff and her supervisors, Ella Weaver and Barbara Wilson, Defendant

decided to terminate Plaintiff for repeated attendance violations.

Defendant seeks summary judgment on all of Plaintiff's claims.  Plaintiff seeks partial

summary judgment on her claim that she was entitled to take leave because of her serious

1

medical condition.  She does not move for summary judgment on her claim that under the FMLA she was entitled to take leave to care for her teenage daughter.

Defendant is entitled to sovereign immunity on Plaintiff's claim that Plaintiff was entitled to take leave because of her serious medical condition.  Therefore, summary judgment is granted as to this claim for Defendant, and Plaintiff's motion is denied.  There is a genuine issue of material fact on Plaintiff's remaining claim that she missed work to care for her teenage daughter, so summary judgment for Defendant is not proper on this issue.

## Standard of Review

The party moving for summary judgment under Fed. R. Civ. P. 56 has the initial burden of demonstrating that there is no genuine issue as to any material fact and that it is entitled to judgment as a matter of law.  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 256, 106 S. Ct. 2505, 2514 (1986).  Movant may show that the undisputed material facts affirmatively establish a right to judgment.  Alternatively, movant may establish that the other party has the burden of proof at trial, and has failed to "make a showing sufficient to establish the existence of an element essential to [its] case."  *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23, 106 S. Ct. 2548, 2522 (1986).

In order to avoid summary judgment, the  party opposing the motion must come forward with competent summary judgment evidence of the existence of a genuine fact issue.  *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 585-86, 106 S. Ct. 1348, 1335 (1986); *Anderson*, 477 U.S. at 257, 106 S. Ct. at 2514.  The nonmoving party  "must do more than simply show that there is some metaphysical doubt as to the material facts."  *Matsushita*, 475 U.S. at 586, 106 S. Ct. at 1356.   Fed. R. Civ.  P. 56 requires that the nonmoving party set

2

forth specific facts showing that there is a genuine issue for trial. *Anderson,* 477 U.S. at 256,

106 S. Ct. at 2514. Only a genuine dispute over a material fact (a fact which might affect the

outcome of the suit under the governing substantive law) will preclude summary judgment.

*Anderson*, 477 U.S. at 248, 106 S. Ct. at 2510. The dispute is genuine if the evidence is such

that a reasonable jury could return a verdict for the nonmoving party on the issue. *Id.* If the

factual context renders a claim implausible (for example if the claim simply makes no economic

sense) nonmovants "must come forward with more persuasive evidence to support their claim

than would otherwise be necessary." *Matsushita*, 475 U.S. at 587, 106 S. Ct. at 1356.

Fed. R. Civ. P. 56(c) requires the court to look at the full record, including the pleadings,

depositions, answers to interrogatories, admissions, and affidavits. But, the court is not going to

"sift through the record in search of evidence to support a party's opposition to summary

judgment." *Doddy v. Oxy USA, Inc.*, 101 F.3d 448, 463 (5th Cir. 1996)(citations omitted); *see*

*also* Local Rule CV-56(c) and Appendix 1, ¶ 3 of the Order Governing Proceedings in this case.

All reasonable inferences to be drawn from the underlying facts must be viewed in the light most

favorable to the party opposing the motion, and any doubt must be resolved in its favor.

*Matsushita*, 475 U.S. at 587, 106 S. Ct. at 1356. However, only *reasonable* inferences in favor

of the nonmoving party can be drawn from the evidence. *Eastman Kodak Co. v. Image Tech.*

*Servs., Inc.*, 504 U.S. 451, 468, 112 S. Ct. 2072, 2083 (1992).

### Analysis

The FMLA entitles eligible employees to take up to 12 work weeks of unpaid leave

annually for any of several reasons, including the onset of a "serious medical condition"

affecting an employee's child or the employee herself. 29 U.S.C. § 2612(a)(1)(C)-(D). The

FMLA "creates a private right of action to seek both equitable relief and money damages against any employer (including a public agency) in any Federal or State court of competent jurisdiction . . . should that employer interfere with, restrain, or deny the exercise of FMLA rights . . . ." *Nevada Dep't of Human Resources v. Hibbs*, 538 U.S. 721, 740, 123 S.Ct. 1972, 1976 (2001)(citations and quotations omitted).  Under the FMLA, a plaintiff may also bring suit where any employer discharges, or in any other manner discriminates against, any individual for opposing any practice made unlawful under the FMLA.  29 U.S.C. § 2615(a)(2).

The FMLA contains two distinct provisions.  *See Haley v. Alliance Compressor, LLC*, 391 F.3d 644, 649 (5th Cir. 2004).  Section 2615(a)(1) creates a series of entitlements or substantive rights.  *Id.*  Section 2615(a)(2) is proscriptive, and protects employees from retaliation for exercising their rights.  *Id.*

Ms. Jordon alleges violations under Section 2615(a)(1) for interfering with her rights pursuant to 29 U.S.C. § 2612(a)(1)(C) (the "Family-Care Clause") and 29 U.S.C. § 2612(a)(1)(D) (the "Self-Care Clause"), and violations under Section 2615(a)(2) for retaliating against her for exercising her right to take leave under these sections.

## A. Sovereign Immunity and the Self-Care Clause

Plaintiff states she was entitled to take FMLA leave under the Self-Care Clause because she had extremely high blood pressure and a doctor ordered her not to work beginning May 12, 2005.  Defendant argues that the Eleventh Amendment bars Plaintiff Jordon from pursuing any claim for violations of the Self-Care Clause in federal court.

The Eleventh Amendment jurisdictionally bars a suit in federal court by a private individual against a state, absent Congress' express abrogation of immunity or the state's

consent.  *See Pace v. Bogalusa City School Bd.*, 403 F.3d 272, 276-77 (5th Cir. 2005).  It is

undisputed that Defendant is an agency of the State of Texas, and so Defendant is entitled to the

same immunity as the State under the Eleventh Amendment.  The issue, then, is whether the

State is immune from suit for claims brought under the Self-Care Clause of the FMLA.

   1. Congress has not abrogated a state's sovereign immunity under the Self-Care Clause of
   the FMLA.

   Congressional abrogation of state immunity requires a clear expression of Congress'

intent to abrogate and a valid exercise of congressional power pursuant to Section 5 of the

Fourteenth Amendment.  *Seminole Tribe v. Florida*, 517 U.S. 44, 55, 116 S.Ct. 1114,1123

(1996).  The Section 5 power is remedial in nature and limits Congress to correcting violations

of rights guaranteed by that amendment.  *City of Boerne v. Flores*, 521 U.S. 507, 519, 117 S.Ct.

2157, 2163-64 (1997).  Where Congress elects to invoke its Section 5 powers, the remedy

supplied must be congruent and proportional to the violation Congress seeks to correct.  *Id.* at

520, 117 S.Ct. at 2164.

   The Fifth Circuit previously held that Congress did not validly abrogate a state's

sovereign immunity under either the Self-Care Clause or the Family-Care Clause.  *See Kazmier*

*v. Wildmann*, 225 F.3d 519, 526, 529 (5th Cir. 1998).  Subsequent to this decision, the Supreme

Court ruled that an individual may sue a state for money damages in federal court for a violation

of the Family-Care Clause because Congress did validly abrogate the states' sovereign immunity

under that section.  *Hibbs*, 538 U.S. at 740, 123 S.Ct. at 1984.  Contrary to the Fifth Circuit's

analysis in *Kazmier*, the Supreme Court found that "the States' record of unconstitutional

participation in, and fostering of, gender-based discrimination in the administration of leave

benefits [was] weighty enough to justify the enactment of prophylactic § 5 legislation."  *Id.* at

735, 123 S.Ct. at 1981.

The Supreme Court then went on to conclude that Congress' chosen remedy of the Family-Care leave provision of the FMLA is congruent and proportional to the targeted violation of gender discrimination because gender discrimination involves a heightened level of scrutiny. *Id.* at 736-37, 123 S.Ct. at 1982. However, the Supreme Court focused exclusively on the gender discrimination that motivated the enactment of the Family-Care provision and made no reference to the Self-Care Clause under 29 U.S.C. § 2612(a)(1)(D) in any part of the opinion. The Court specifically noted that legislation responding to perceived discrimination based upon age or disability did not abrogate states' immunity. *Hibbs*, 538 U.S. at 735, 123 S.Ct. at 1981.

Defendant contends that the Fifth Circuit holding in *Kazmier*, that the Self-Care Clause does not abrogate a state's sovereign immunity, still binds this court. Based on the legislative history, the Fifth Circuit rejected the argument that the Self-Care Clause targets gender discrimination. 225 F.3d at 527. The Fifth Circuit proceeded upon the theory that the Self-Care provision was designed to prevent discrimination on the basis of temporary disability, which is subject to the lowest level of scrutiny. *Id.* at 528. Plaintiff argues that *Kazmier* has been effectively overruled and that the rationale underlying the Fifth Circuit's opinion has been undermined. This ignores the previously mentioned statement by the Supreme Court regarding age and disability discrimination. The Fifth Circuit has not had occasion to rule on this issue since the *Kazmier* decision.

Given the narrow holding by the Supreme Court in *Hibbs*, this court concludes that the Fifth Circuit decision in *Kazmier*, as it applies to the Self-Care Clause, has not been overruled and is binding on this court. *See Tennesse v. Lane*, 541 U.S. 509, 511, 124 S.Ct. 1978, 1981

(2004)(the Supreme Court recognized that in *Hibbs* it only approved the Family-Care leave provision of the FMLA as valid § 5 legislation).

The legislative record pertaining to the Self-Care Clause does not support a finding that the Self-Care Clause was a remedy for state sponsored gender discrimination.  "None of the evidence presented to Congress, however, could properly be imputed to state sponsored discrimination.  And, although admirable in its objectives, there is no indication that employers, private or public, participated in a pattern of discriminatory conduct by granting or denying medical leave based on an employee's gender."  *Bryant v. Mississippi State University*, 329 F.Supp.2d 818, 825 (N.D. Miss. 2004)(discussing the legislative history under the Self-Care Clause).  On the other hand, the legislative record pertaining to the Family-Care Clause contained numerous examples of past discrimination against women by the states.  *See Hibbs*, 538 U.S. at 730-35, 123 S.Ct. at 1979-81.  Because there is no evidence of state sponsored discrimination in the legislative history in regard to the Self-Care Clause, the court concludes that Congress did not validly abrogate the State's sovereign immunity pursuant to Section 5 of the Fourteenth Amendment.

The only other courts in the Fifth Circuit to address this issue have reached the same result.  *See Bryant*, 329 F.Supp.2d at 827; *Solley v. Big Spring State Hosp.*, 2004WL1553423, *4 (N.D. Tex.).  This interpretation is also supported by decisions after *Hibbs* in two other circuits. *See Touvell v. Ohio Dept. of Mental Retardation and Development Disabilities*, 422 F.3d 392, 400-3 (6th Cir. 2005), *cert. denied*, – U.S – ,126 S.Ct. 1339 (2006) (discussing the legislative history and holding that even in light of *Hibbs* the Self-Care Clause does not abrogate the Eleventh Amendment); *Brockman v. Wyoming Dep't. of Family Servs.*, 342 F.3d 1159, 1164

7

(10th Cir. 2003), *cert. denied*, 540 U.S. 1219,124 S.Ct. 1509 (2004) (discussing the legislative

history of the statute and holding that the *Hibbs* decision is limited to the Family-Care Clause

and so the Eleventh Amendment bars suits brought under the Self Care Clause against a state).

2. Texas has not waived its sovereign immunity with respect to the Self-Care Clause.

Plaintiff argues that the State of Texas has waived its sovereign immunity to suits

brought under the Self-Care Clause.  She proffers a Texas statute which says that state

employees are covered by the FMLA and Defendant's employee handbook which states that its

employees are entitled to full FMLA rights.  Defendant claims that Plaintiff fails to identify any

specific language that shows the State of Texas knowingly waived its Eleventh Amendment

immunity.

A state may waive sovereign immunity by consenting to suit, but the decision to waive

that immunity must be voluntary on the part of the sovereign.  *Meyers ex rel. Benzing v. Texas*,

410 F.3d 236, 241 (5th Cir. 2005).  "It has long been settled that a state's waiver of its Eleventh

Amendment immunity must be unequivocally expressed."  *Perez v. Region 20 Educ. Serv.*

*Center*, 307 F.3d 318, 332 (5th Cir. 2002).  "Further, for a state statute to waive Eleventh

Amendment immunity, 'it must specify the State's intent to subject itself to suit in *federal*

*court*.'"  *Martinez v. Tex. Dept. of Criminal Justice*, 300 F.3d 567, 576 (5th Cir. 2003)(emphasis

in original)(citations omitted).

Tex. Gov't Code § 661.912 states in relevant part "[t]o the extent required by federal law,

a state employee who has a total of at least 12 months of state service and who has worked at

least 1,250 hours during the 12-month period preceding the beginning of leave under ths section

is entitled to leave under the Family Medical Leave Act of 1993."  There is no unequivocal

indication in the statute that the State has waived any immunity from suit under the FMLA, much less that it has expressly intended to subject itself to suit in federal court.  Plaintiff has come forward with no evidence, other than the language of the statute, to support her interpretation of a waiver of immunity.

Plaintiff also argues that the employee handbook waives sovereign immunity.  The handbook, like the statute, makes no reference to waiver of sovereign immunity or that the State intends to subject itself to suit in federal court.  The court concludes that neither the Government Code nor the employee handbook unequivocally waive Defendant's immunity in this case.  *See Perez,* 307 F.3d at 332. (where the Texas Labor Code did not expressly waive sovereign immunity in federal court, but only state court, the State was immune from suit).  Therefore, Plaintiff's motion for summary judgment must be denied and Defendant is entitled to summary judgment on Plaintiff's claim for violations of the Self-Care provision as a matter of law.

## B. Family Care Clause

Plaintiff claims that she was entitled to take leave under the Family-Care Clause in order to care for her pregnant teenage daughter, and that Defendant violated the FMLA by interfering with this right and by retaliating against her for taking authorized leave.  Defendant argues that Plaintiff has abandoned her claims in regard to this clause, and that no serious medical condition existed which would entitle Plaintiff to take leave.  Defendant admits that Plaintiff properly pled claims under the Family-Care Clause, but asserts that in her deposition and discovery responses, Plaintiff only stated claims for violations under the Self-Care Clause.  Because Plaintiff has responded to Defendant's motion, and there is evidence which, if believed, supports her Family-Care claim, the court cannot conclude that her properly pled claim has been abandoned as a

matter of law.

    1. Claim for interference with rights under Section 2615(a)(1)

    To present a claim for interference with her FMLA rights, Plaintiff must show that: (1) she is an eligible employee under the FMLA, (2) the defendant is an employer subject to the requirements of the FMLA, (3) she was entitled to FMLA leave, (4) she gave notice to the defendant of her intention to take FMLA leave, and (5) the defendant denied her the benefits to which she was entitled under the FMLA. *See Hunt v. Rapides Healthcare System, LLC*, 277 F.3d 757, 763 (5th Cir. 2001). The parties do not dispute that Plaintiff was an eligible employee under the FMLA nor that Defendant is an employer subject to the requirements of the FMLA. Defendant argues that Plaintiff was not entitled to FMLA leave.

    Under the Family-Care Clause, an employee is entitled to take up to twelve weeks of unpaid leave to care for her son or daughter who has a serious medical condition. 29 U.S.C. § 2612(a)(1)(C).[1] A "serious medical condition" is defined under the FMLA as an illness, injury, impairment, or physical or mental condition that involves (1) inpatient care in a hospital, hospice, or residential medical care facility; or (2) continuing treatment by a health care provider. 29 U.S.C. § 2611(11). Plaintiff claims she missed work from May 2 to May 5, 2005 to care for her daughter immediately prior to and after her daughter gave birth, and that she notified

---

[1] While not discussed by the parties, the term "son or daughter"means a child who is under 18 years of age or "18 years of age or older and incapable of self-care because of a mental or physical disability." 29 U.S.C. § 2611(12). The parties do not state how old Plaintiff's daughter was at the time of her pregnancy. Defendant assumes that she falls within the statutory definition. The court notes that even if Plaintiff's daughter was 18 or older when she gave birth, there is evidence to suggest that her daughter was experiencing something beyond a normal pregnancy, and that she may have been under a physical disability because of the pregnancy. *See Navarro v. Pfizer Corp.*, 261 F.3d 90, 104-5 (1st Cir. 2001)(question of fact existed on whether pregnancy complications resulted in a physical disability under the statute).

Defendant that she was missing those days for this reason.  It is Plaintiff's contention Defendant improperly based its decision to terminate Plaintiff, in part, on her missing these days.

Defendant argues pregnancy, by itself, is not a "serious medical condition" within the meaning of the statute.  Defendant is correct that pregnancy is not always considered to be a "serious medical condition."  *See, e.g., Cruz v. Publix Super Markets, Inc.*, 428 F.3d 1379, 1383 (11th Cir. 2005).  However, it is obvious that in some cases a pregnancy can be a serious medical condition.  The material issue of fact here is whether Plaintiff's daughter had a serious medical condition during and after the birth of her child.

Based on the deposition testimony of Plaintiff and her daughter, there is some evidence that Plaintiff's daughter was under the continuing treatment of a health care provider immediately preceding and after giving birth.  There is also some evidence that Plaintiff's daughter was admitted to the hospital and was receiving inpatient care between May 2 to May 5. At the summary judgment stage, inferences must be drawn in the light most favorable to Plaintiff.  There is some evidence to suggest that Plaintiff's daughter had a serious medical condition within the meaning of the statute at least from May 2 to May 5.   The court cannot say as a matter of law that she did not have a serious medical condition.  Because there is a genuine issue of material fact as to whether Plaintiff's daughter had a serious medical condition, Defendant is not entitled to summary judgment on Plaintiff's claim for interference with her FMLA rights under the Family-Care Clause. *See Atchley v. Nordam Group, Inc.*, 180 F.3d 1143, 1150 (10th Cir. 1999)(whether a serious medical condition existed was a question of fact for the

jury).[2]

## 2. Claim for retaliation for exercising her rights under Section 2615(a)(2)

In analyzing claims under Section 2615(a)(2), where there is no direct evidence of retaliation, the Fifth Circuit has adopted the three-part burden shifting framework under *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802-05 (1973). *See Richardson v. Monitronics Intern., Inc.,* 434 F.3d 327, 332 (5th Cir. 2005).  First, Plaintiff must establish a prima facie case of retaliation by demonstrating that: (1) she engaged in a protected activity, (2) the employer discharged her, and (3) there is a causal connection between the protected activity and the discharge.  *Id.* at 332.  Once Plaintiff makes this preliminary showing, the employer must articulate a legitimate nondiscriminatory reason for the plaintiff's termination.  *Id.* at 332.

Plaintiff is then given the opportunity to demonstrate either: (1) that Defendant's non-discriminatory reason is a pretext for intentional discrimination (pretext alternative), or (2) that Defendant's reason, while true, is only one of the reasons for the conduct and another is the discrimination (mixed motive alternative). *Richardson*, 434 F.3d at 333.

Under the mixed motive alternative, if the employee proves that discrimination was a motivating factor, the burden shifts again to the employer, to prove that it would have taken the same action despite the discriminatory animus. The employer's burden is effectively that of proving an affirmative defense. *Richardson,* 434 F.3d at 336.

---

[2]To the extent Defendant moves for summary judgment on the fact Plaintiff did not give Defendant notice of her intention to take FMLA leave, there is conflicting evidence before the court on this issue, and summary judgment would not be proper.

*a. Prima Facie Case*

It is not disputed Plaintiff was discharged and, as noted, there is some evidence to suggest she qualified for leave time under the Family-Care Clause of the FMLA.  To prove her *prima facie* case of retaliation, Plaintiff still needs to show a link between the complaints and the alleged retaliation.  "In order to establish the causal link between the protected conduct and the illegal employment action as required by the prima facie case, the evidence must show that the employer's decision was based in part on knowledge of the employee's protected activity." *Sherrod v. American Airlines, Inc.*, 132 F.3d 1112, 1122 (5th Cir. 1998).

It is undisputed that Ella Weaver, Plaintiff's supervisor, was one of the decision makers, and there is some evidence that Ms. Weaver knew that Plaintiff had taken time off to care for her daughter in May 2005.  The court concludes Plaintiff has established a *prima facie* case.

*b. Legitimate, Non-discriminatory Reason*

Defendant states Plaintiff violated DADS' attendance policies and was terminated for excessive absenteeism and abuse of leave time.  DADS' attendance policy requires a person to work as scheduled unless prior leave time has been obtained from a supervisor.  When calling in sick, a person must call in a timely fashion and give a satisfactory explanation.  Upon returning to work, a doctor's statement must be provided.  If these procedures are not followed, an employee is given a First Level Reminder.  A First Level Reminder remains in effect for three months.  If additional violations occur while the First Level Reminder is in effect, the next stage of discipline is a Second Level Reminder.  After a person is given a Second Level Reminder, termination may result for any further failure to comply with the attendance policies.

The evidence before the court shows Plaintiff was placed on a First Level Reminder on

13

November 26, 2003 and was removed on February 26, 2004.  Plaintiff was then placed back on a

First Level Reminder on January 12, 2005 for failure to provide a medical note after calling in

sick, on a day for which she had previously told her supervisor she would call in sick, if she was

not given time off.  On February 1, 2005, Plaintiff was placed on Second Level Reminder

because she again failed to report to work after claiming illness due to high blood pressure and

not providing any kind of a medical note.  Defendant alleges Plaintiff informed Ella Weaver on

May 13, 2005 that Plaintiff would be off work indefinitely for medical reasons.  Defendant states

that no medical documentation was ever provided after continued requests.  After a conference

was held on May 24, 2005 to discuss Plaintiff's absenteeism, Plaintiff was terminated for failing

to comply with the attendance policy and abuse of leave time.  This is a legitimate, non-

discriminatory reason for Plaintiff's termination.

### c. Pretext and mixed motive arguments

After the May 24, 2005 meeting to discuss Plaintiff's possible termination, one of

Plaintiff's supervisor, Barbra Wilson, made a memorandum regarding what was discussed and

stating the recommendation that Plaintiff be terminated.  Ms. Wilson explicitly states that she

and Ms. Weaver were aware of the time Plaintiff took off to care for her daughter and that this

was part of the reason Plaintiff was being terminated.  Given the supervisor's explicit reference

to this time as part of the reason for her termination, a reasonable jury could infer that but-for

Jordon's protected activity of taking time off to care for her daughter, she would not have been

terminated.  Plaintiff also presented evidence that she did submit a doctor's note dated May 12,

2005 to Ella Weaver stating why Plaintiff had to be off work.  This serves to cast doubt on

Defendant's proffered reason for termination.  Because the court concludes that Plaintiff has

14

shown pretext, the court does not need to address Plaintiff's arguments under the mixed-motive framework.  Defendant is not entitled to summary judgment on Plaintiff's claims for retaliation under the Family-Care Clause.

## IV. Conclusion

Plaintiff's claims for violations of the Self-Care Clause of the FMLA are barred by the Eleventh Amendment.  However, there are genuine issues of material fact involving Plaintiff's claims under the Family-Care Clause of the FMLA.  The case will proceed to trial for a determination of this issue.

IT IS THEREFORE ORDERED that Defendant's Motion for Summary Judgment [**Doc. # 19**] is **GRANTED IN PART** and **DENIED IN PART.**

IT IS FURTHER ORDERED that Plaintiff's Motion for Partial Summary Judgment [**Doc. # 20**] is **DENIED**.

So **ORDERED** and **SIGNED** this **28** day of **June, 2006.**

_____
Ron Clark, United States District Judge